**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

|  |  |
|---|---|
| JOHN DOE, <br><br>                    Plaintiff, <br><br>    vs. <br><br> RAINBOW USA, INC., and <br> APPLICANTSAFE, LLC, <br><br>                    Defendants. | Civil Action No.: 26-cv-3545 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff John Doe ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendants Rainbow USA, Inc. ("Rainbow") and ApplicantSafe, LLC ("ApplicantSafe") (together, "Defendants"), alleges as follows, upon personal knowledge as to his own acts and observations and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. This is an action under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"); the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law art. 25, § 380 et seq. ("NY FCRA"); the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., including the New York City Fair Chance Act (the "Fair Chance Act" or "FCA"), N.Y.C. Admin. Code § 8-107(11-a), and the NYCHRL's protection for favorably terminated criminal accusations, N.Y.C. Admin. Code § 8-107(11); and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(16).

2. In June 2025, the Superior Court of New Jersey resolved a three-count criminal matter against Plaintiff: two counts—including the most serious-sounding charges of aggravated assault and weapons possession—were dismissed immediately, and the single remaining count was

diverted into New Jersey's Pre-Trial Intervention ("PTI") program, a non-conviction diversionary program, which ultimately resulted in the dismissal of the charge upon completion of the PTI.

3. Yet in May 2026, when Rainbow ordered a background check in connection with a $90,000-per-year job offer to Plaintiff, ApplicantSafe reported all three counts—under a banner reading "***Alert!!***"—as "Pre-Trial Intervention Program in Progress." ApplicantSafe never reported that two of the three counts had been dismissed. The truth was a matter of public record in the same Somerset County court file from which ApplicantSafe purported to draw its information.

4. Rainbow revoked Plaintiff's conditional offer within days, expressly based in whole or in part on ApplicantSafe's report—before Plaintiff had even received a copy of the report, without providing Plaintiff the written, individualized "Fair Chance Analysis" the FCA requires, without identifying which "fair chance factors" it considered (it considered none), and without holding the position open for the statutory minimum of five business days so that Plaintiff could respond, as the FCA requires, or affording him any opportunity to respond to the report before the decision was made, as the FCRA requires.

5. When Plaintiff disputed the report, ApplicantSafe deleted the records and reissued the report finding "No Reportable Records Found"—while simultaneously insisting in writing that it "understand[s] the New Jersey records in question to be accurate and reportable." By then the damage was done: the start date had passed, and Rainbow has refused to reinstate the offer, ignoring Plaintiff's certified letter enclosing the corrected report. The Superior Court of New Jersey has dismissed the underlying criminal matter in its entirety.

6. By this action, Plaintiff seeks back pay, front pay or instatement, actual and compensatory damages including for emotional distress, statutory damages, punitive damages, and attorneys'

fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o, N.Y. Gen. Bus. Law §§ 380-l and 380-m, N.Y.C. Admin. Code § 8-502, and N.Y. Exec. Law § 297.

## PLAINTIFF'S USE OF A PSEUDONYM

7.   Plaintiff brings this action under the pseudonym "John Doe" because the action necessarily concerns sensitive, non-conviction criminal-history information—dismissed charges and participation in a diversionary program—whose wrongful publication and wrongful use, and the harsh effects stemming therefrom, are the very subject of this lawsuit. Requiring Plaintiff to litigate under his true name would compound the precise injury the FCRA, the NY FCRA, the NYCHRL, and the NYSHRL are designed to prevent: the public association of a job applicant with non-conviction criminal-history information.

8.   Plaintiff's identity is known to both Defendants, which will suffer no prejudice from the use of a pseudonym: Rainbow recruited, interviewed, and extended a written offer to Plaintiff, and ApplicantSafe maintains a consumer file concerning him and corresponded with him directly. Contemporaneously with the filing of this Complaint, Plaintiff is moving by separate motion for leave to proceed under a pseudonym and will disclose his identity to the Court under seal if directed.

## JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction over Plaintiff's FCRA claims against both Defendants pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10. This Court has supplemental jurisdiction over Plaintiff's NYCHRL and NYSHRL claims against Rainbow and his NY FCRA claims against ApplicantSafe pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same consumer report, the same revocation of the same conditional offer of employment, and the same injuries as the federal claims, and form part of the same case or controversy.

11. This Court has personal jurisdiction over Rainbow because Rainbow maintains its principal place of business in this District and the acts and omissions giving rise to this action occurred in this District.

12. This Court has specific personal jurisdiction over ApplicantSafe pursuant to N.Y. C.P.L.R. 302(a)(1) because ApplicantSafe transacted business within New York by contracting to supply, and supplying, a pre-employment background screening report to Rainbow in Brooklyn, New York, for use in connection with employment in New York, and Plaintiff's claims arise from that transaction; the report at issue is on its face directed to "Rainbow Apparel Companies . . . 1000 Pennsylvania Ave Brooklyn, NY 11207." In addition or in the alternative, this Court has personal jurisdiction over ApplicantSafe pursuant to N.Y. C.P.L.R. 302(a)(3)(ii) because ApplicantSafe committed tortious acts without the state causing injury to Plaintiff within the state—the loss of employment located in Brooklyn—and, upon information and belief, ApplicantSafe regularly does or solicits business in New York, and/or derives substantial revenue from screening services rendered to New York users of consumer reports, and expected or should reasonably have expected its acts to have consequences in New York. The exercise of jurisdiction over ApplicantSafe comports with due process because ApplicantSafe purposefully availed itself of the New York market by furnishing consumer reports to New York employers for New York hiring decisions.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District: the report at issue was furnished to Rainbow in Brooklyn, the employment decision at issue was made at Rainbow's Brooklyn headquarters, and the position Plaintiff lost was located in this District.

14. Joinder of Defendants is proper under Federal Rule of Civil Procedure 20(a)(2): the claims against Rainbow and ApplicantSafe arise out of the same transaction, occurrence, or series of

transactions or occurrences—the preparation, furnishing, and use of a single consumer report and the resulting revocation of a single offer of employment—and common questions of law and fact, including the contents, accuracy, and effect of the report, are common to both Defendants.

15. Pursuant to N.Y.C. Admin. Code § 8-502(c), Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York.

16. Plaintiff has not filed a complaint with the New York City Commission on Human Rights or the New York State Division of Human Rights with respect to the claims asserted herein. See N.Y.C. Admin. Code § 8-502(a); N.Y. Exec. Law § 297(9).

## **PARTIES**

17. Plaintiff John Doe is a natural person and at all relevant times has been a citizen and resident of Somerset County, New Jersey. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and N.Y. Gen. Bus. Law § 380-a(b).

18. Defendant Rainbow is a retail apparel company with its corporate headquarters and principal place of business at 1000 Pennsylvania Avenue, Brooklyn, New York 11207. At all relevant times, Rainbow employed four or more persons and was an "employer" within the meaning of N.Y.C. Admin. Code § 8-102 and N.Y. Exec. Law § 292(5), and a "person" within the meaning of 15 U.S.C. § 1681a(b) that used a consumer report for "employment purposes" within the meaning of 15 U.S.C. § 1681a(h).

19. Defendant ApplicantSafe, LLC is a background screening company with its principal place of business at P.O. Box 1195, Jackson, New Jersey 08527. For monetary fees, ApplicantSafe regularly engages in whole or in part in the practice of assembling and evaluating consumer credit information and other information on consumers—including criminal-record information—for the purpose of furnishing consumer reports to third parties, including employers, by means of

interstate commerce. ApplicantSafe is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and N.Y. Gen. Bus. Law § 380-a(e).

20. The report at issue was a "consumer report" as defined by 15 U.S.C. § 1681a(d) and N.Y. Gen. Bus. Law § 380-a(c), furnished for "employment purposes" as defined by 15 U.S.C. § 1681a(h).

21. At all relevant times, Plaintiff was an applicant for employment with Rainbow for a position located in New York City and was a "person" protected by the NYCHRL and an "individual" protected by the NYSHRL.

**FACTUAL ALLEGATIONS**

**A.      The Criminal Matter and Its Resolution**

22. In December 2024, a three-count criminal complaint was filed against Plaintiff in Somerset County, New Jersey, charging: (1) endangering the welfare of a child by a caretaker (second degree); (2) possession of a weapon for an unlawful purpose (third degree); and (3) aggravated assault (third degree).

23. On or about June 27, 2025, the Superior Court of New Jersey, Somerset County, entered a Pre-Trial Intervention Order of Postponement admitting Plaintiff to the PTI program. Under the court-ordered conditions of that disposition, the matter proceeded on the endangering count alone, but the charge was in temporary abeyance during the PTI program. The remaining two counts— the weapons count and the aggravated assault count—were dismissed.

24. Accordingly, from on or about June 27, 2025, forward, the true and publicly available status of the matter was: two counts dismissed; one count pending in a diversionary, non-conviction program. No count had resulted in a conviction.

25. The two dismissed counts were, as of June 27, 2025, and at all times thereafter, criminal accusations that were not pending against Plaintiff and that had been followed by a termination of the criminal proceeding in Plaintiff's favor.

26. On June 5, 2026, upon application of the Vicinage Chief Probation Officer and with the consent of the prosecutor, the Superior Court entered a Pretrial Intervention Order of Dismissal dismissing the matter in its entirety, without cost to Plaintiff; from that date, every accusation against Plaintiff had terminated in his favor and none was pending.

### B.       Rainbow's Conditional Offer of Employment

27. On or about May 12, 2026, Rainbow extended to Plaintiff a written offer of employment as a Lease Administrator in its Real Estate Department at its Brooklyn, New York headquarters, signed by Matthew Sugrue, Rainbow's Manager of Talent Acquisition & HR Operations (the "Offer Letter").

28. The Offer Letter provided for a starting annualized salary of $90,000, paid weekly, increasing to $95,000 after ninety days subject to satisfactory performance, together with medical, dental, vision, life, and disability insurance; a 401(k) plan with a four percent company match; paid time off; and other benefits. The Offer Letter asked Plaintiff to confirm a start date of Tuesday, May 26, 2026, and stated: "All of us who met with you believe that you will enjoy working here at Rainbow, and that you will be a great asset to our operation and to the Company."

29. Plaintiff accepted the offer and prepared to begin work on May 26, 2026.

30. The offer was conditioned upon the completion of a pre-employment background check. In connection with his application, Plaintiff signed an authorization permitting Rainbow to procure a consumer report about him.

**C.     ApplicantSafe's False Report**

31. On or about May 18, 2026, Rainbow—through its Loss Prevention department—ordered a pre-employment background screening report on Plaintiff from ApplicantSafe.

32. On or about May 19, 2026, ApplicantSafe furnished its report to Rainbow in Brooklyn, New York (the "Report"), for use in connection with employment in New York.

33. Under the heading "State Criminal Records Search" and a banner reading "*************************** Alert!! ***************************," the Report stated "Records Found" and listed all three counts of the Somerset County matter. For each of the three counts—including the two counts that had been dismissed on or about June 27, 2025—the Report stated the disposition as: "Pre-Trial Intervention Program in Progress. PTI Start: 02/10/2025; PTI End: 06/27/2026."

34. The Report nowhere stated that the weapons count and the aggravated assault count had been dismissed. To the contrary, the Report affirmatively represented to Rainbow that Plaintiff faced three live counts—including aggravated assault with a deadly weapon and unlawful weapons possession—that remained unresolved and might still result in a guilty conviction.

35. The Report was inaccurate and materially misleading. The dismissals were reflected in the same Somerset County Superior Court file, bearing the same case number, that ApplicantSafe purported to search, and had been a matter of public record for nearly eleven months.

36. Upon information and belief, ApplicantSafe did not obtain or review the current disposition information in the court file before furnishing the Report and instead furnished stale information without verifying its completeness or current status.

37. Upon information and belief, ApplicantSafe did not provide Plaintiff with notice, at the time the public-record information was reported to Rainbow, of the fact that such information was being reported, together with the name and address of the person to whom it was being reported.

Plaintiff first learned of the Report when Rainbow's pre-adverse action letter, dated May 20, 2026, arrived in the mail.

**D.      Rainbow Revokes the Offer Without Any Fair Chance Process and Without the Pre-Adverse Action Process the FCRA Requires**

38. By letter dated May 20, 2026, captioned "Pre-Adverse Action Letter," Rainbow informed Plaintiff that it had received the Report and that it "may make an adverse decision that may be based, in whole or part, on this report," enclosing the Report and a summary of rights under the FCRA.

39. The May 20, 2026, letter was postmarked May 21, in Trenton. Plaintiff did not receive the May 20, 2026, letter until May 23, 2026.

40. On May 21, 2026—before Plaintiff had received the May 20 letter, the Report, or the summary of rights—Mr. Sugrue informed Plaintiff by telephone that Rainbow had already decided to withdraw the offer. Mr. Sugrue stated that the decision had been made by Rainbow's Vice President of Human Resources.

41. Mr. Sugrue confirmed the withdrawal in writing by email that same day, May 21, 2026, at 4:05 p.m.: "We have withdrawn the offer for now and will review if you provide the background check company further information."

42. Accordingly, Rainbow made and communicated to Plaintiff its adverse decision—the withdrawal of his conditional offer of employment—before Plaintiff had received a copy of the Report or the written description of his rights under the FCRA, and without affording Plaintiff any opportunity, much less a reasonable one, to review the Report and respond to it, dispute it, or explain it.

43. On May 26, 2026—the very day Plaintiff was to have started work—Rainbow issued a formal "Adverse Action Notice" stating that "we find it necessary to rescind our previous offer of

employment" and that "[t]his decision was based in whole or part, on the information provided to us in a Consumer Report or Investigative Consumer Report" prepared by ApplicantSafe.

44. At no time before, at, or after revoking the conditional offer did Rainbow: (a) provide Plaintiff with a written copy of any individualized analysis of his criminal history; (b) identify, evaluate, or weigh any of the "fair chance factors" set forth in N.Y.C. Admin. Code § 8-107(11-a) or the factors set forth in Article 23-A of the New York Correction Law; (c) explain how any item of criminal history bore on the duties of a Lease Administrator; (d) afford Plaintiff a reasonable period of time—let alone the statutory minimum of five business days—to respond before taking adverse action; or (e) hold the position open during any such period.

45. Rainbow's revocation was based in whole or in part on Plaintiff's criminal history as described in the Report—including the two dismissed counts, which were non-pending criminal accusations that had terminated in Plaintiff's favor and that no New York employer may lawfully consider.

### E.    Plaintiff's Dispute and ApplicantSafe's Pirouette

46. Plaintiff promptly disputed the accuracy of the Report with ApplicantSafe.

47. On or about May 28, 2026, ApplicantSafe representatives told Plaintiff to disregard certain dispute-related correspondence he had received, acknowledging that ApplicantSafe had made a mistake and would send a new letter.

48. By letter dated June 1, 2026, ApplicantSafe advised Plaintiff that it had completed its reinvestigation of the disputed records, which it described as referencing a "Pre-Trial Intervention Program in Progress." ApplicantSafe wrote: "Although we understand the New Jersey records in question to be accurate and reportable, we have removed the records from the report to address your concerns."

49. Thus, while the records were deleted from a revised *report*, ApplicantSafe nonetheless maintained the felonies in its *file* for Plaintiff as "accurate and reportable." *See Cortez v. Trans Union*, 617 F.3d 688, n.27 (3d Cir. 2010) (countenancing the difference between "report" and "file").

50. The implication of ApplicantSafe's letter was that ApplicantSafe stood by its reporting of the records, notwithstanding the reissued report, and would not admit error (or note that the two violent felonies were in fact dismissed) if contacted by Rainbow.

51. ApplicantSafe's revised report, dated June 1, 2026, concluded, in a manner evoking suspicion, "No Reportable Records Found" (emphasis added), for both its New Jersey state criminal records search and its national criminal database search.

52. ApplicantSafe stated in writing that it had "already provided a copy of the updated report to Rainbow Apparel Companies."

53. ApplicantSafe's June 1, 2026, assertion that the original records were "accurate" was false: the original Report described two dismissed counts as pending in a diversionary program.

54. That ApplicantSafe maintained this position even after a reinvestigation prompted by Plaintiff's specific dispute demonstrates that its procedures for assuring accuracy and currency are inadequate by design, and that its conduct was knowing or reckless.

55. On June 2, 2026, Plaintiff sent Rainbow's HR/Loss Prevention department a letter by USPS certified mail enclosing the corrected ApplicantSafe report, the Offer Letter, and a Fair Chance Act fact sheet, and asking Rainbow to advise him of the next steps for starting his role or, alternatively, to confirm whether the offer had been withdrawn.

56. On June 5, 2026, the Superior Court of New Jersey entered an order dismissing the underlying criminal matter in its entirety.

57. Rainbow has not responded to Plaintiff's June 2, 2026, letter, has not reinstated the offer, and has not employed Plaintiff—even though, since June 1, 2026, the operative consumer report has reflected no reportable records at all, and, since June 5, 2026, every criminal accusation against Plaintiff has been dismissed. Plaintiff's start date passed while ApplicantSafe's false Report stood as the operative account of his background.

58. Had ApplicantSafe performed the requisite Fair Chance analysis, it would have learned that (a) the violent felonies had in fact been dismissed and ApplicantSafe could not lawfully consider them at all; (b) Plaintiff was just days away from being fully and finally cleared of the one remaining charge; and (c) on this posture, Plaintiff was fully qualified to perform the duties of a Lease Administrator without any concern at all. The Fair Chance factors would have weighed in favor of giving Plaintiff the job.

59. Separately, one reason Plaintiff could not have persuaded his employer that ApplicantSafe had "corrected any error" or "made a simple mistake" because ApplicantSafe in fact maintained the very same, uncorrected records in the file; maintained they were "accurate and reportable"; still suggested they existed by stating that only no "reportable" records had been found on the revised report; and would have apparently disclaimed any error in the initial report had Rainbow called ApplicantSafe for clarification or confirmation of error. This resulted from ApplicantSafe's failed or lazy reinvestigation which did not look at the actual court records, which showed the two violent felonies were "dismissed," not pending.

### F.    Plaintiff's Damages

60. As a direct and proximate result of Defendants' conduct, Plaintiff has lost the salary and benefits of the Lease Administrator position—$90,000 per year rising to $95,000, plus medical, dental, vision, life, and disability insurance, 401(k) matching contributions, paid time off, and other benefits—from May 26, 2026, forward.

61. Plaintiff had been receiving New Jersey unemployment insurance benefits of $785 per week while seeking work. As of early June 2026, only $841 remained available on his claim, leaving Plaintiff facing the imminent and total loss of income that the Rainbow position would have prevented.

62. Plaintiff is actively seeking employment but has not been able to find it, and his family and young children are threatened, causing severe emotional distress. Plaintiff has two young children who depend on him.

63. Plaintiff has suffered emotional distress, humiliation, anxiety, and reputational harm—including the dissemination to his prospective employer of false statements that he faced pending charges of aggravated assault with a deadly weapon, unlawful weapons possession, and child endangerment—and out-of-pocket expenses in connection with disputing the Report, as well as damage to his professional reputation and career trajectory.

## FIRST CAUSE OF ACTION
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (Against Defendant Rainbow)

64. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

65. Section 1681b(b)(3)(A) of the FCRA provides that, in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report and (ii) a description in writing of the rights of the consumer under the FCRA.

66. The purpose of § 1681b(b)(3)(A) is to afford the consumer a meaningful opportunity, before the adverse decision is made, to review the report and to respond to it—to dispute inaccurate information with the consumer reporting agency or to discuss the report with the employer. The provision's sequencing requirement accordingly obligates the employer both to provide the

required documents before taking adverse action and to allow the consumer a reasonable period of time to respond before the decision is made.

67. Rainbow used the Report for employment purposes and took adverse action against Plaintiff based in whole or in part on the Report when it withdrew Plaintiff's conditional offer of employment and communicated that withdrawal to Plaintiff on May 21, 2026, by telephone and by email, and acknowledged that the decision was "based in whole or part" on the Report.

68. Rainbow took that adverse action before providing Plaintiff with a copy of the Report or the written description of his rights: its pre-adverse action letter was dated only the previous day, May 20, 2026, and had not been received by Plaintiff when Rainbow communicated the withdrawal of the offer on May 21, 2026. Rainbow's adverse decision was a completed decision— made, in Mr. Sugrue's words, by Rainbow's Vice President of Human Resources—that Rainbow announced to Plaintiff as an accomplished fact.

69. Rainbow likewise failed to allow Plaintiff any period of time—much less a reasonable one—to respond to the Report before its decision was made. The injury from that failure is concrete and demonstrated by this record: had Plaintiff been given the opportunity to respond, he would have shown—as ApplicantSafe's own June 1, 2026, corrected report later confirmed—that two of the three reported counts—the two most serious-sounding ones, violent felonies to boot—had been dismissed and that the Report was materially false.

70. Rainbow's violations of § 1681b(b)(3) were willful within the meaning of 15 U.S.C. § 1681n: Rainbow's own pre-adverse action letter demonstrates that it knew of the FCRA's pre-adverse action requirements, yet it treated that letter as paper compliance while its decision-maker had, by its manager's admission, already made the decision—conduct that is knowing or, at

minimum, in reckless disregard of the statute. In the alternative, Rainbow's violations were negligent within the meaning of 15 U.S.C. § 1681o.

71. As a direct and proximate result, Plaintiff suffered actual damages, including lost wages and benefits, emotional distress, and reputational harm, and is entitled to actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, or, in the alternative, actual damages and attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**New York City Fair Chance Act,**
**N.Y.C. Admin. Code § 8-107(11-a)**
**(Against Defendant Rainbow)**

72. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

73. The Fair Chance Act, N.Y.C. Admin. Code § 8-107(11-a), makes it an unlawful discriminatory practice for an employer to take adverse action against an applicant—including by revoking a conditional offer of employment—based on the applicant's criminal history, unless the employer first completes the Fair Chance Process.

74. Among other things, the employer must: (a) provide the applicant with a written copy of the inquiry it conducted into the applicant's criminal history; (b) perform an individualized analysis of the relevant statutory Fair Chance factors and provide the applicant with a written copy of that analysis, including the employer's reasons for taking adverse action; and (c) after providing those documents, allow the applicant a reasonable period of no fewer than five business days to respond, holding the position open during that time.

75. Rainbow took adverse action against Plaintiff based on his criminal history by revoking his conditional offer of employment on May 21, 2026, as confirmed by its Adverse Action Notice

of May 26, 2026, which acknowledged that the decision was based in whole or in part on the consumer report describing Plaintiff's criminal history.

76. Rainbow never requested information from Plaintiff relating to the relevant fair chance factors nor submitted to Plaintiff written copy of any inquiry.

77. Rainbow violated § 8-107(11-a) in that it: (a) failed to perform any individualized analysis of the fair chance factors or the Article 23-A factors; (b) failed to provide Plaintiff with any written Fair Chance Analysis; (c) failed to allow Plaintiff any time—much less five business days—to respond before taking adverse action; (d) failed to hold the position open while Plaintiff responded; (e) predetermined the outcome, revoking the offer before Plaintiff had even received the report on which the revocation was based; and (f) based its decision in whole or in part on dismissed, non-pending, non-conviction matters that may not lawfully be considered under the NYCHRL, much less in any Fair Chance analysis whatsoever.

78. Rainbow's violations continued after June 1, 2026, when it received the corrected consumer report finding no reportable records, and after June 2, 2026, when Plaintiff delivered that corrected report by certified mail, because Rainbow nonetheless refused to reinstate the conditional offer or to employ Plaintiff, without ever conducting or providing the required Fair Chance process.

79. In light of the circumstances, a reasonable time to respond would have extended until June 5, 2026, at which point the final charge was to be and in fact was dismissed, such that no criminal charges could lawfully be considered thereafter in evaluating Plaintiff's job application.

80. Rainbow's conduct was willful, wanton, and undertaken with reckless indifference to Plaintiff's rights under the NYCHRL: its own manager admitted the decision was made before Plaintiff received the report; it revoked the offer one day after the date of its pre-adverse letter; and

it persisted in its refusal even after the sole stated basis for its decision was withdrawn by the consumer reporting agency itself.

81. As a direct and proximate result of Rainbow's unlawful discriminatory practices, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, anxiety, reputational harm, and other damages, and is entitled to compensatory damages, punitive damages, injunctive relief including instatement, and attorneys' fees and costs pursuant to N.Y.C. Admin. Code § 8-502.

**THIRD CAUSE OF ACTION**
**New York City Human Rights Law,**
**N.Y.C. Admin. Code § 8-107(11) (Favorably Terminated Criminal Accusations)**
**(Against Defendant Rainbow)**

82. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

83. N.Y.C. Admin. Code § 8-107(11) makes it an unlawful discriminatory practice for an employer to deny employment to, or to act adversely upon, any person by reason of an arrest or criminal accusation of such person that is not then pending and that was followed by a termination of the criminal action or proceeding in favor of such person.

84. As of May 2026, the weapons count and the aggravated assault count described in the Report were criminal accusations that were not pending against Plaintiff and that had been followed by a termination of the criminal proceeding in Plaintiff's favor: they had been dismissed by order of the Superior Court of New Jersey on or about June 27, 2025.

85. Rainbow denied Plaintiff employment and acted adversely upon him—by revoking his conditional offer—based in whole or in part upon those non-pending, favorably terminated criminal accusations, which were presented to Rainbow in the Report as live counts and which Rainbow made no effort to evaluate, verify, or disregard.

86. Rainbow's violation continued after June 5, 2026, when the Superior Court dismissed the matter in its entirety: from that date, every criminal accusation against Plaintiff was non-pending and favorably terminated, yet Rainbow has continued to refuse to employ Plaintiff by reason of those accusations. Had Rainbow performed the requisite Fair Chance analysis, giving Plaintiff opportunity to respond, Rainbow would have learned that the only non-dismissed charge was going to be finally dismissed on June 5.

87. Rainbow's conduct was willful, wanton, and undertaken with reckless indifference to Plaintiff's rights under the NYCHRL.

88. As a direct and proximate result, Plaintiff has suffered and continues to suffer the damages described above, and is entitled to compensatory damages, punitive damages, injunctive relief including instatement, and attorneys' fees and costs pursuant to N.Y.C. Admin. Code § 8-502.

**FOURTH CAUSE OF ACTION**
**New York State Human Rights Law,**
**N.Y. Exec. Law § 296(16)**
**(Against Defendant Rainbow)**

89. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

90. N.Y. Exec. Law § 296(16) makes it an unlawful discriminatory practice for any person, including an employer, to make any inquiry about, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual that is not then pending and that was followed by a termination of the criminal action or proceeding in favor of such individual, in connection with, among other things, the employment of that individual. The NYSHRL is to be construed liberally for the accomplishment of its remedial purposes. N.Y. Exec. Law § 300.

91. Rainbow acted adversely to Plaintiff in connection with his employment—by revoking his conditional offer of employment and by thereafter refusing to employ him—upon the dismissed weapons and aggravated assault counts, which were arrests or criminal accusations not then

pending against Plaintiff that had been followed by a termination of the criminal proceeding in his favor.

92. Rainbow's violation continued after June 5, 2026, when every criminal accusation against Plaintiff became non-pending and favorably terminated upon the dismissal of the matter in its entirety, and Rainbow nonetheless continued to refuse to employ Plaintiff by reason of those accusations.

93. Rainbow's conduct was willful, wanton, and undertaken with reckless indifference to Plaintiff's rights under the NYSHRL.

94. As a direct and proximate result, Plaintiff has suffered and continues to suffer the damages described above, and is entitled to compensatory damages, punitive damages, and attorneys' fees pursuant to N.Y. Exec. Law § 297.

**FIFTH CAUSE OF ACTION**
**Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**
**(Against Defendant ApplicantSafe)**

95. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

96. Section 1681e(b) of the FCRA requires that, whenever a consumer reporting agency prepares a consumer report, it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

97. ApplicantSafe prepared and furnished a consumer report concerning Plaintiff that was inaccurate and materially misleading: it reported two criminal counts that had been dismissed nearly eleven months earlier as live counts "in progress" in a diversionary program, and failed to report their dismissal.

98. ApplicantSafe failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported, including by failing to obtain, review, or report the current disposition of the counts from the very public court file it purported to search; by reporting stale

disposition data without verification; and by employing procedures that, as its June 1, 2026 letter confirms, treat dismissed charges as "accurate and reportable" criminal-record information.

99. The current disposition of a criminal charge—whether it has been dismissed—is the single most consequential datum in a criminal-records report furnished for employment purposes, and the risk that reporting dismissed charges as pending will cause the denial of employment is obvious and well known throughout the background screening industry.

100. Plaintiff was ready, willing, and able to supply ApplicantSafe with the court's order of dismissal itself, which was thus readily and objectively verifiable.

101. ApplicantSafe's conduct was willful within the meaning of 15 U.S.C. § 1681n, in that it was knowing or undertaken in reckless disregard of its statutory duties, as demonstrated by, among other things: the patent nature of the inaccuracy; the availability of the correct disposition in the same court file; and ApplicantSafe's written insistence—after reinvestigation—that records describing dismissed counts as pending were "accurate." In the alternative, ApplicantSafe's conduct was negligent within the meaning of 15 U.S.C. § 1681o.

102. As a direct and proximate result, Plaintiff suffered actual damages, including the loss of the Rainbow position and its wages and benefits, emotional distress, reputational harm, and out-of-pocket costs.

103. Plaintiff is entitled to recover actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, or, in the alternative, actual damages and attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

**SIXTH CAUSE OF ACTION**
**Fair Credit Reporting Act, 15 U.S.C. § 1681k(a)**
**(Against Defendant ApplicantSafe)**

104.     Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

105.     Section 1681k(a) of the FCRA provides that a consumer reporting agency which furnishes a consumer report for employment purposes, and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, shall (1) at the time such public record information is reported to the user of the consumer report, notify the consumer of the fact that public record information is being reported, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported, it is complete and up to date.

106.     The criminal-record information in the Report was a matter of public record, was compiled and reported for employment purposes, and was likely to have—and in fact had—an adverse effect on Plaintiff's ability to obtain employment.

107.     ApplicantSafe did not notify Plaintiff, at the time the public-record information was reported to Rainbow on or about May 19, 2026, of the fact that public-record information was being reported or of the name and address of the person to whom it was being reported.

108.     Nor did ApplicantSafe maintain strict procedures designed to ensure that the public-record information it reported was complete and up to date. The Report did not reflect the current public-record status of the items reported: two of the three counts had been dismissed on or about June 27, 2025, yet were reported on May 19, 2026, as pending in a diversionary program. The

information reported was neither complete nor up to date. ApplicantSafe did not look, or did not look closely, at the underlying court records, public records, and court order.

109.    ApplicantSafe's violations of § 1681k(a) were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

110.    As a direct and proximate result, Plaintiff suffered the actual damages described above, and is entitled to actual or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

**SEVENTH CAUSE OF ACTION**
**New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-j(a)(1)**
**(Willful Noncompliance, N.Y. Gen. Bus. Law § 380-l; in the Alternative, Negligent**
**Noncompliance, N.Y. Gen. Bus. Law § 380-m)**
**(Against Defendant ApplicantSafe)**

111.    Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

112.    New York General Business Law § 380-j(a)(1) prohibits a consumer reporting agency from reporting, or maintaining in the file on a consumer, "information relative to an arrest or a criminal charge unless there has been a criminal conviction for such offense, or unless such charges are still pending."

113.    ApplicantSafe furnished the Report to Rainbow in Brooklyn, New York, for use in connection with Plaintiff's prospective employment in New York. The Report and its preparation, furnishing, and use are subject to the NY FCRA.

114.    As of May 19, 2026, the weapons count and the aggravated assault count described in the Report had not resulted in convictions and were not pending: they had been dismissed on or about June 27, 2025.

115.    By reporting information relative to those dismissed, non-pending, non-conviction charges to Rainbow, and by *maintaining* that information in Plaintiff's file, ApplicantSafe violated N.Y. Gen. Bus. Law § 380-j(a)(1).

116.    ApplicantSafe specifically told Plaintiff that it *maintained* that the dismissed records were "accurate and reportable," even if the new report said otherwise, in violation of that specific aspect of the provision.

117.    ApplicantSafe's violation was knowing and willful within the meaning of N.Y. Gen. Bus. Law § 380-l, as demonstrated by, among other things, its post-reinvestigation insistence that the records were "accurate and reportable." ApplicantSafe knows that, under the New York state and city laws cited herein, the employers and agencies, including itself, cannot consider or even "make inquiry" into non-pending charges; thus, no reasonable interpretation of state or city law could have justified ApplicantSafe's reporting.

118.    In the alternative, ApplicantSafe's violation was negligent within the meaning of N.Y. Gen. Bus. Law § 380-m.

119.    As a direct and proximate result, Plaintiff suffered the actual damages described above, and is entitled to actual damages, punitive damages in such amount as the court may allow, and costs and reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law §§ 380-l and 380-m.

## EIGHTH CAUSE OF ACTION
### Fair Credit Reporting Act, 15 U.S.C. § 1681i
### (Against Defendant ApplicantSafe)

120.    Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

121.    Section 1681i(a)(1)(A) of the FCRA provides that, if the completeness or accuracy of any item of information contained in a consumer's file is disputed by the consumer and the consumer notifies the consumer reporting agency of the dispute, the agency shall, free of charge,

conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and record the current status of the disputed information or delete the item from the file, before the end of the thirty-day period beginning on the date the agency receives notice of the dispute. Section 1681i(a)(5) further requires the agency promptly to delete "from the file" or modify any item of information that is found, after reinvestigation, to be inaccurate, incomplete, or unverifiable.

122.    Plaintiff notified ApplicantSafe of his dispute of the completeness and accuracy of the criminal-record information in the Report, including that the Report described counts that had been dismissed as pending in a diversionary program.

123.    ApplicantSafe failed to conduct a reasonable reinvestigation of Plaintiff's dispute. A reasonable reinvestigation—which required nothing more than reviewing the current disposition entries in the same Somerset County Superior Court file from which the reported records were drawn, or from Plaintiff or Plaintiff's attorney should the records have been for some reason unavailable online—would have determined that the disputed information was inaccurate, because two of the three reported counts had been *dismissed* on or about June 27, 2025.

124.    Instead, ApplicantSafe concluded, and stated in writing on June 1, 2026, that it "understand[s] the New Jersey records in question to be accurate and reportable," and represented that it had removed the records from a subsequent report merely "to address your concerns."

125.    ApplicantSafe nonetheless maintained the information in its "file" on Plaintiff, as described above.

126.    ApplicantSafe thereby failed to determine that the disputed information was inaccurate and failed to record, in its *file*, the true current status of the disputed information (dismissed) as 15 U.S.C. § 1681i(a)(1)(A) requires.

127.     This violation was substantive and caused actual damages: during any (FCRA, Fair Chance Act, or other) process to dispute the revoked offer, Plaintiff reasonably knew that, should Rainbow have inquired directly of ApplicantSafe, ApplicantSafe would have *confirmed* the existence of the initially-reported charges as "accurate" and *not* "dismissed." Plaintiff had nothing from ApplicantSafe to present to Rainbow to confirm the two violent felonies were in fact dismissed, not pending, and had been reported in an inaccurate manner. Indeed ApplicantSafe explicitly implied their continued, non-dismissed existence in the revised report by stating that ApplicantSafe had merely found "no *reportable* records" (emphasis added, implying that the originally-reported records *did* exist as previously reported, they were just not "reportable").

128.     ApplicantSafe's violations of § 1681i were willful within the meaning of 15 U.S.C. § 1681n, in that ApplicantSafe knowingly or recklessly adhered—after a consumer dispute that specifically directed it to the inaccurate status and dismissals—to the position that dismissed charges were accurately reported as pending. In the alternative, ApplicantSafe's violations were negligent within the meaning of 15 U.S.C. § 1681o.

129.     As a direct and proximate result, Plaintiff suffered actual damages, including continued emotional distress and humiliation while his dispute was pending and after ApplicantSafe insisted that the false records were accurate, and the deprivation of a determination of inaccuracy that Plaintiff could have presented to Rainbow in seeking reinstatement of his offer. Plaintiff is entitled to actual or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

**NINTH CAUSE OF ACTION**
**New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-f**
**(Willful Noncompliance, N.Y. Gen. Bus. Law § 380-m; in the Alternative, Negligent**
**Noncompliance, N.Y. Gen. Bus. Law § 380-l)**
**(Against Defendant ApplicantSafe)**

130.    Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

131.    New York General Business Law § 380-f is the NY FCRA's dispute-and-reinvestigation provision. It provides that, when a consumer disputes the completeness or accuracy of any item of information contained in his file and the dispute is conveyed to the consumer reporting agency by the consumer, the agency must, within a reasonable period of time and without charge, reinvestigate and record the current status of the disputed information, unless it has reasonable grounds to believe that the dispute is frivolous or irrelevant, and for any record that is erroneous or unverifiable, the agency must promptly "*expunge* the item and otherwise correct the file" (emphasis added).

132.    Plaintiff conveyed his dispute directly to ApplicantSafe. Plaintiff's dispute was neither frivolous nor irrelevant: it concerned the reporting, as pending, of criminal counts that had been dismissed nearly a year earlier.

133.    ApplicantSafe failed to comply with § 380-f. Its reinvestigation did not record the true current status of the disputed information—that two of the three counts had been dismissed on or about June 27, 2025—and instead concluded that records describing those dismissed counts as pending in a diversionary program were "accurate and reportable."

134.    ApplicantSafe's *suppression* of the records (as not "reportable," implying they were still accurate and existed) from a subsequent *report*—done merely "to address your concerns"—underscores that ApplicantSafe did not "*expunge*" or "otherwise correct" the file.

Nothing in ApplicantSafe's file indicated the charges were dismissed; ApplicantSafe's file on Plaintiff maintained that the charges were "accurate and reportable."

135.    ApplicantSafe's violation of § 380-f was knowing and willful within the meaning of N.Y. Gen. Bus. Law § 380-m. In the alternative, ApplicantSafe's violation was negligent within the meaning of N.Y. Gen. Bus. Law § 380-l.

136.    As a direct and proximate result, Plaintiff suffered the actual damages described above, and is entitled to actual damages, punitive damages in such amount as the court may allow, and costs and reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law §§ 380-l and 380-m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a.    Declaring that Rainbow's conduct violated 15 U.S.C. § 1681b(b)(3), N.Y.C. Admin. Code §§ 8-107(11-a) and 8-107(11), and N.Y. Exec. Law § 296(16), and that ApplicantSafe's conduct violated 15 U.S.C. §§ 1681e(b), 1681k(a), and 1681i and N.Y. Gen. Bus. Law §§ 380-j(a)(1) and 380-f;

b.    Ordering Rainbow to instate Plaintiff to the Lease Administrator position, or, in the alternative, awarding front pay;

c.    Awarding Plaintiff back pay and the value of lost benefits, with prejudgment interest;

d.    Awarding Plaintiff, against both Defendants, actual and compensatory damages, including damages for emotional distress, humiliation, and reputational harm, and out-of-pocket expenses;

e.    Awarding Plaintiff statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

f.  Awarding Plaintiff punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), N.Y.C. Admin. Code § 8-502, N.Y. Exec. Law § 297, and N.Y. Gen. Bus. Law § 380-m;

g.  Awarding Plaintiff his reasonable attorneys' fees, costs, and disbursements pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), N.Y.C. Admin. Code § 8-502(g), N.Y. Exec. Law § 297(10), and N.Y. Gen. Bus. Law §§ 380-l and 380-m;

h.  Awarding pre- and post-judgment interest as permitted by law; and

i.  Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: June 12, 2026

Respectfully submitted,

*/s/Noah Kane*
Noah Kane, Esq. [NY No. 6009682]
Mallon Consumer Law Group, PLLC
305 Broadway
New York, NY 10007
T: (267) 832-2657
Email: noah@consumerprotectionfirm.com
Attorney for Plaintiff John Doe